## HARTFIELD v. HERZFELD et al.

District Court, S. D. New York.

July 20, 1932.

Emily Holt, of New York City (Rebecca Brownstein, of New York City, of counsel), for complainant.

Guggenheimer, Strasser & Meyer, of New York City (Edwin Levisohn, of New York City, of counsel), for defendants.

FRANK J. COLEMAN, District Judge.

Prior to 1905 the plaintiff had for many years been a compiler and publisher of commercial codes for use in communicating by telegraph or cable. In that year he copyrighted in his own name a code for use by stockbrokers, under the title "Hartfield's Wall Street Code." Its basic idea was a list of the expressions commonly used in that business arranged alphabetically and grouped in-

to sections according to subject-matter, and a parallel list of artificial code words all of the same number of letters and also arranged alphabetically, each one of which words was on the same line as the business expression which it represented. The fact that both lists were arranged alphabetically made it possible to encode or decode a message easily. In compiling the code, the author had to determine what expressions were sufficiently common in the business to warrant having a separate code word.

At about the same time the plaintiff contracted with various brokerage houses to prepare so-called private editions of the Wall Street Code for their individual use, and among such houses was the defendant partnership. Such private editions were prepared by merely changing the relative positions of the two parallel lists so that each code word corresponded to a different expression in the different editions; also a few additional expressions and code words were inserted in each special edition, depending upon the needs of the particular brokerage house. The edition which the plaintiff prepared for the defendants he copyrighted in his own name under the title "Herzfeld & Stern Bankers and Brokers New York."

The defendants used that code from 1905 until 1922, when they had a new code prepared by some other person, which is alleged to be an infringing publication. The plaintiff apparently had no information of this alleged infringement until 1929, when the defendants again sought a new code and invited the plaintiff to bid on the work. He then discovered that since 1922 they had been using a code which he claims largely appropriated his copyrighted work of 1905.

There is no question presented as to the infringement. At the trial the defendants did contend that their code of 1922 was not an infringement; but their counsel in his briefs waives the question, and states that "for the purpose of the present decision defendants are willing to assume that its 1922 code is not only similar to but identical with its 1905 code. * * * Defendants have avoided confusing this single issue by refusing to interject as the plaintiff seeks to do the questions of difference, similarity or public domain."

The one issue which the defendants raise is whether they did not have the right to make copies of the 1905 code which had been prepared expressly for them. This would depend entirely upon what was the mutual intention of the parties at the time of the contract. So long a time has elapsed that the evidence as to the terms of the contract is quite indefinite. Probably the agreement was in writing which is not now available. But the undisputed facts and circumstances make it clear to me that there was no mutual intention to give the defendants the right to copy. In the first place, it must be recognized that the plaintiff's basic work, the Wall Street Code, was the result of years of labor, and was intended to have a general sale among stockbrokers at $10 a copy. For a consideration of about $1,000 the plaintiff undertook to make the modifications in it necessary for the defendants' special edition and to supply the defendant with a specified number of copies. The Wall Street Code was copyrighted first and the special editions later. Surely the plaintiff did not intend to give to the defendants the right to copy its special edition which incorporated practically all of the Wall Street Code. It may well be that the plaintiff could have been enjoined from selling copies of the defendants' special code to other persons, but that is not inconsistent with his retention of a right to stop the defendants from copying. Not only did he register the copyright of their code in his own name, but that fact was plainly printed in each of the copies which he furnished to them and which they used for seventeen years without objection. Under all the circumstances I have not the slightest doubt but that the mutual intention of the parties was that plaintiff retain the sole right to copy the plaintiff's special code and to make such profit as might arise in the future from selling new copies of it to the defendants. Since that is the only issue which the defendants wish decided, a decree must be directed for the plaintiff.

The small amount involved would make it wasteful to appoint a special master, and it would be wise to follow the plaintiff's suggestion that the court fix a definite sum as damages. That matter has not been very thoroughly developed by either side, but my present opinion is that justice would be served best by awarding $750 as damages to the plaintiff and $500 as counsel fee together with the costs of the suit. These figures are only tentatively suggested, and, if they are not satisfactory to both sides, I will grant a further hearing in the matter. Settle decree on notice.